NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| Kennedy Funding, Inc., | : | |
| Plaintiff, | : | Civ. No. 05-4741 (DRD) |
| v. | : | |
| Lion's Gate Development, LLC, et al., | : | **O P I N I O N** |
| Defendants/Third-Party Plaintiffs, | : | |
| v. | : | |
| Jeffrey Wolfer, et al., | : | |
| Third Party Defendants. | : | |

---

David Kohane, Esq.
Damian Albergo, Esq.
Kristine Dress, Esq.
COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800

*Attorneys for Plaintiff and Third Party Defendant*s Michael R. Leighton, Esq. and COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.

Gregg D. Trautmann, Esq.
TRAUTMANN & ASSOCIATES, L.L.C.
262 East Main Street
Rockaway, New Jersey 07866

*Attorney for Defendants/Third Party Plaintiffs*

Jordan B. DeFlora, Esq.
2 University Plaza, Suite 402
Hackensack, New Jersey 07601

*Attorney for Third Party Defendants Jeffrey Wolfer, Joseph Wolfer, Kevin Wolfer and Gregg Wolfer*

**DEBEVOISE, Senior District Judge**

## I. PROCEDURAL HISTORY

Plaintiff, Kennedy Funding, Inc. ("KFI"), filed a complaint against Lion's Gate Development, LLC, Iyad A. Youssef, Leo National, Inc., and Elia Niam (referred to collectively as "Lion's Gate"), alleging claims arising from a loan agreement in which KFI agreed to lend Lion's Gate $18.2 million as part of a real estate transaction. The complaint lists the following counts: 1) breach of contract; 2) fraud; and 3) breach of the implied covenant of good faith and fair dealing.

Thereafter, Lion's Gate filed a counterclaim and third-party complaint against KFI and several of its officers, Jeffrey Wolfer, Joseph Wolfer, Kevin Wolfer and Gregg Wolfer ("the Wolfers"), as well as the attorneys who represented KFI in the transaction, the firm of Cole, Schotz, Meisel, Forman & Leonard, PA ("Cole Schotz"), Michael R. Leighton, Esq., and various John Doe attorneys. The counterclaim and third-party complaint was later amended. Counts 1 through 5 of the amended counterclaim and third-party complaint allege the following claims against KFI and the Wolfers: Count 1 - violation of New Jersey's Racketeer Influenced Corrupt Organization Act ("RICO"); Count 2 - breach of contract with losses derived from the failure to

close on the real estate transaction; Count 3 - breach of the covenant of good faith and fair dealing; Count 4 - common law fraud; and Count 5 - violation of the New Jersey Consumer Fraud Act.  In Count 6 Lion's Gate charges KFI, the Wolfers, Michael Leighton and Cole Schotz with breach of contract for losses derived from the fees paid under the loan agreement.  In Count 7 Lion's Gate charges Michael Leighton and Cole Schotz with New Jersey RICO conspiracy.

Presently before the court are the following motions: i) KFI's motion for judgment on the pleadings with regard to Counts 1, 4 and 5 of the amended counterclaim and third-party complaint; ii) the Wolfers' motion to dismiss Counts 1 through 6 of the amended counterclaim and third-party complaint for failure to state a claim; iii) Michael Leighton's and Cole Schotz's motion to dismiss Count 7 of the amended counterclaim and third-party complaint for failure to state a claim; iv) Lion's Gate's motion to bar consideration of facts and arguments raised in certain briefs and affidavits.  At the oral argument on the motions KFI agreed with the court that Count 2 of its complaint failed to allege fraud with sufficient specificity and that it should be dismissed without prejudice.

For the reasons set forth below KFI's motion for judgment on the pleadings on Counts 1, 4 and 5 will be granted without prejudice.  The Wolfers' motion to dismiss Counts 1, 2, 3, 4, 5 and 6 as against them will be granted without prejudice.  Michael Leighton's and Cole Schotz's motion to dismiss Count 7 will be granted without prejudice.  Lion's Gate's motion to bar consideration of certain facts and arguments will be dismissed as moot.

## II.  BACKGROUND

**The amended counterclaim and third-party complaint**

KFI and the Wolfers in various of their briefs and other papers have asserted allegations that Lion's Gate and its principals had agreed to the payment of the commitment fee, had not performed the conditions upon which extension of the loan was predicated, and, in fact, had themselves engaged in fraudulent conduct. These allegations cannot be considered in the context of the present motions. KFI and the Wolfers argue that the amended counterclaim and third-party complaint contain insufficient allegations of fraud to support the RICO claim. However, if all the allegations of those pleadings were accepted as true, and if all reasonable inferences favorable to Lion's Gate were drawn therefrom, the following scenario can be deemed to be alleged.

The Wolfers, working through their corporation, KFI, were engaged in the business of commercial real estate lending. (Para. 1-20). To attract borrowers they made extravagant claims on their website, e.g., "they have been providing lightning fast service and creative funding solutions throughout North America since 1986 and internationally since 1996;" "Traditional lending institutions take their sweet time to close on multimillion dollar deals. We think your time is too valuable to waste;" and "The company credits its tremendous growth to its creative approach, stringent loan-to-value ratio, business savvy and hands-on-style, which has the principals doing work that in other lending institutions would be farmed out to 'experts.'" (Para. 20-27).

Lion's Gate was seeking a loan of $18.2 million in order to purchase real estate in Arizona. It sought to enter into a loan agreement with KFI and began negotiating terms on or about July 28th, 2005. Drafts were passed back and forth and there were also negotiations on the telephone. The fourth and final draft dated August 10, 2005 provided for a loan amount of $18.2

million and a closing date of August 15, 2005, with time being of the essence. (Para. 28-39). Pursuant to the commitment on August 10 Lion's Gate forwarded $536,000 by wire transfer to the trust account of KFI's attorneys to be held in accordance with an escrow agreement. (Para. 44-49).

KFI issued the commitment to assure Lion's Gate that KFI had the funds in their accounts or readily available to them to make the loan in the amount of $18.2 million and to induce Lion's Gate to execute the commitment agreement and pay $536,000 into the escrow account. This assurance was false in that KFI did not have $18.2 million in its accounts or available to it, and it never intended to extend the loan to Lion's Gate. Lion's Gate, however, relied on the assurance and upon KFI's expressed intent to execute the commitment agreement and pay the $536,000 into the escrow account. (Para. 51-55).

In order to avoid closing on the loan, KFI falsely stated that Lion's Gate had not met the conditions that were called for in the commitment agreement and, in fact, imposed additional conditions that had to be met prior to closing. Those conditions, including the requirement that Lion's Gate obtain additional soil tests, could not be satisfied before the closing date. (Para. 58-59).

When KFI informed Lion's Gate that it had not met the conditions in the commitment agreement the parties began to engage in negotiations to arrange a loan for another transaction. KFI informed Lion's Gate that it would apply the $536,000 commitment fee to another loan. Before any such agreement was made, KFI commenced the present action against Lion's Gate. (Para. 62-67).

KFI never intended to extend the loan to Lion's Gate. In addition to not having the funds available to make the loan, KFI failed to take other steps necessary to complete the transaction. Specifically, KFI failed to comply, or even attempt to comply, with provisions of the Patriot Act, 31 U.S.C. § 5311 et seq., that require financial institutions to perform labor intensive verifications for transactions such as this one. (Para. 73-78).

KFI has committed similar acts in the past, promising loans to other potential borrowers and then allegedly defrauding them by keeping various application fees and refusing to provide the funds. One such instance involved a loan commitment to Harbor Place, Inc. KFI entered into a loan agreement with Harbor Place, Inc., intending not to perform, under which Harbor Place sought to borrow $70 million. KFI required Harbor Place to pay a $700,000 commitment fee and then, without justification, refused to close the loan and refused to return the commitment fee. (Para. 82-90).

**The loan commitment agreement**

To understand what reasonable inferences can be drawn from the allegations in the counterclaim and third-party complaint it is necessary to consider those allegations within the context of the commitment agreement that is referenced so frequently throughout the counterclaim and third-party complaint. Under the heading "DOCUMENTATION," the loan commitment provides the following:

> KFI's commitment to provide the Loan is subject to the negotiation, execution and delivery of definitive Loan and security agreements, mortgages or deeds of trust, notes, and other documentation and customary certificates and legal opinions (collectively, the "Loan Documents"), which in each case will be in form, substance and enforceability satisfactory to KFI in its sole discretion. The Loan Documents shall contain conditions precedent, representations and

6

>warranties, covenants, events of default and other terms and conditions consistent with the terms hereof as shall be satisfactory to KFI in its sole discretion and deemed appropriate by KFI for a transaction of the type contemplated herein.

Under the heading "RETURN OF COMMITMENT FEE" the agreement states the following:

>If KFI is unable to perform its obligations under the terms of this commitment for whatever reason, KFI shall only be obligated to refund the paid portion of the commitment fee. Said refund shall be the total extent of any liability or obligation on the part of KFI under any circumstance. There will be no refund if Borrower does not accept the loan offer(s) made by KFI pursuant to this commitment or Borrower has not complied with all the conditions of this commitment.

(emphasis removed).

Schedule B of the agreement provides that "[t]he title in the project and the form and substance of each and every document evidencing the Loan and the security thereof or incident thereto, must be satisfactory to and approved by Counsel to the Lender in its sole discretion." Another section of Schedule B states that "[p]rior to the closing of the Loan and disbursement of funds, in each instance the Borrower must . . . produce such evidence as Lender may require to demonstrate current full compliance with all applicable zoning, health, environmental and safety laws, ordinances and regulations . . . ."

### III.  DISCUSSION

**Standard for Dismissal under FED. R. CIV. P. 12(b)(6) and (c)**

A defendant may move to dismiss a complaint or parts of a complaint before or after filing an answer. See FED. R. CIV. P. 12(b)(6) and (c). A motion made before an answer is filed

is a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6).  A motion made after an answer is filed is a motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c).

The standard under which the Court must analyze the plaintiff's complaint and the defendants' arguments on a Rule 12(c) motion for judgment on the pleadings is the same as the standard on a motion to dismiss under FED. R. CIV. P. 12(b)(6).  See FED. R. CIV. P. 12(h)(2); see also Turbe v. Government of the Virgin Islands, 938 F.2d 427, 428 (3d Cir.1991); Institute for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc., 931 F.2d 1002, 1006 (3d Cir.), cert. denied, 502 U.S. 909 (1991).

Dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73.  Allegations contained in the Complaint will be accepted as true, Cruz v. Beto, 405 U.S. 319, 322 (1972), and Plaintiff shall be "given the benefit of every favorable inference that can be drawn from those allegations."  Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991).  However, the plaintiff is required to make factual allegations and cannot rely on conclusory recitations of law.  Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 179 (3d Cir. 1988).

**Count 1**

In Count 1 of its complaint Lion's Gate alleges that it suffered injuries because KFI and the Wolfers violated New Jersey's Racketeer Influenced Corrupt Organization Act, N.J. STAT. ANN. 2C:41-1, et seq.  Under N.J. STAT. ANN. § 2C:41-4(c) "[a]ny person damaged in his business or property by reason of a violation of N.J. STAT. ANN. § 2C:41-2 may sue" the

violating party.  Section 2C:41-2(c) states that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity . . . ."  "A pattern of racketeering 'requires at least two acts of racketeering activity . . . .  The factor of 'continuity plus relationship' between the two acts 'combines to produce a pattern.'"  Mayo v. Pollack, 351 N.J. Super. 486, 500-501 (App. Div. 2002)(citations omitted).  Racketeering activity includes "all crimes defined in chapter 21 of Title 2C of the New Jersey Statutes."  N.J. STAT. ANN. 2C:41-1(a)(o).

Lion's Gate argues that the facts alleged in its complaint sufficiently plead violations of N.J. STAT. ANN. § 2C:21-4 and 21-7.  Under § 2C:21-4(a), "a person commits a crime . . . if he . . . utters any writing or record knowing that it contains a false statement or information, with purpose to deceive or injure anyone or to conceal any wrongdoing."  Under § 2C:21-7(h), "[a] person commits a crime if in the course of business he . . . makes a false or misleading written statement for the purpose of obtaining property or credit."

To properly plead a RICO claim asserting a fraudulent predicate act a party must comply with the standard articulated in FED. R. CIV. P. 9(b) that requires such allegations to be pled with particularity.  See Shulton, Inc. v. Optel Corp., No. 85-2925, 1986 U.S. Dist. LEXIS 19775, at *49-55 (D.N.J. Sept. 29, 1986).  Thus, to plead violations of §§ 2C:21-4 and 21-7, Lion's Gate must identify a false statement that was made "with purpose to deceive or injure" or "for the purpose of obtaining property or credit."

Lion's Gate's counterclaim and third-party complaint generally asserts that KFI agreed to

9

loan Lion's Gate $18.2 million and that KFI never intended to make such a loan but instead sought only to obtain the $536,000 commitment fee. But the counterclaim and third-party complaint never expressly identifies any false statements made by KFI or the Wolfers, nor does it state how any such statements caused Lion's Gate to suffer harm. Furthermore, Lion's Gate's general assertions regarding alleged misrepresentations in the loan commitment are contrary to the language in that agreement.

For example, Paragraph 53 of the counterclaim and third-party complaint states that the purpose of the loan commitment was to ensure that KFI had the loan funds in its accounts or readily available. Paragraph 54 states that KFI did not actually have the funds in its accounts or readily available. Such allegations suggest that KFI misrepresented its ability to fulfill its obligations under the agreement. But Paragraphs 53 and 54 misstate the terms of the loan commitment. The purpose of that agreement was not to ensure that KFI had the loan funds in its accounts or readily available. Rather, that agreement expressly states, under the heading "LENDER," that KFI "reserves the right to assign or sell participations in all or part of the Loan . . . ." Thus, the clear language of the loan commitment conflicts with Lion's Gate's assertion that the purpose of that agreement was to ensure that KFI had the funds in its accounts or readily available because the agreement clearly states that KFI was entitled to arrange for another lender to provide the necessary funds.

Additionally, Lion's Gate alleges that KFI failed to comply with provisions of the Patriot Act, 31 U.S.C. § 5311 et seq., that require financial institutions to perform labor intensive verifications for transactions such as this one. Thus, Lion's Gate alleges, KFI could not have intended to complete the transaction because it was not taking the steps necessary to do so. But

Lion's Gate never states exactly what KFI failed to do or how such a failure would have prevented KFI from fulfilling its obligations under the loan commitment. Moreover, such an allegation, even if stated with specificity, does not amount to an allegation that KFI or the Wolfers intentionally deceived Lion's Gate.

Lion's Gate also alleges that KFI misrepresented the terms and conditions Lion's Gate would need to satisfy before KFI would close on the loan. Furthermore, Lion's Gate asserts that KFI falsely stated that Lion's Gate had not met the conditions called for in the commitment agreement and, in fact, imposed additional conditions, such as requiring Lion's Gate to obtain soil tests, that could not be satisfied before the closing date.

But the loan commitment provides KFI with virtually unlimited discretion in determining whether Lion's Gate had satisfied the terms of the agreement. As quoted above, the loan commitment states that "Borrower must . . . produce such evidence as Lender may require to demonstrate current full compliance with all applicable zoning, health, environmental and safety laws, ordinances and regulations . . . ." Additionally, the document states that "the form and substance of each and every document evidencing the Loan and the security thereof or incident thereto, must be satisfactory to and approved by Counsel to the Lender in its sole discretion." Finally, the agreement states that "[t]he Loan Documents shall contain . . . terms and conditions consistent with the terms hereof as shall be satisfactory to KFI in its sole discretion . . . ."

Such language gives KFI sole discretion to determine whether the terms of the agreement have been satisfied and allows KFI to require Lion's Gate to produce additional evidence of compliance with zoning, health, environmental and safety laws, ordinances and regulations.

Thus, under the terms of the agreement, KFI was entitled to request additional soil samples if, in its sole discretion, it determined that such samples were necessary to determine compliance with environmental regulations.  Given KFI's broad discretion, Lion's Gate cannot allege that KFI misrepresented the terms and conditions that Lion's Gate needed to satisfy before it would close on the loan.

In addition to alleging that KFI and the Wolfers made a false statement, Lion's Gate must allege a pattern of racketeering activity.  Lion's Gate alleges that KFI "has been involved in other commercial real estate loan agreements with other potential borrowers" and "declared that [those] borrowers . . . failed to satisfy the commitment conditions" so KFI could refuse to close on the loan and retain the commitment fees.  (Para. 79).  But in the allegations relating to those agreements Lion's gate again fails to identify any false statements made by KFI or the Wolfers.  Rather, Lion's Gate merely alleges that KFI entered into loan agreements, collected commitment fees, and never intended to close on the loans.     Nowhere in the complaint does Lion's gate identify a false statement made during the course of those negotiations.  Thus, Lion's Gate has failed to allege a pattern of racketeering.

For the reasons set forth above, Count 1 of the counterclaim and third-party complaint will be dismissed.

**Counts 2, 3, and 6**

In Count 2 of its complaint Lion's Gate alleges that it suffered damages from its inability to close on the real estate purchase due to a breach of the loan commitment by KFI and the Wolfers.  In Count 3 Lion's Gate alleges that those parties breached the covenant of good faith

and fair dealing.  In Count 6 Lion's Gate alleges a breach of contract claim against KFI, the Wolfers and Cole Schotz, and asserts it suffered damages by paying KFI and Cole Schotz fees due under the loan commitment.  The Wolfers argue that those counts, as they relate to them, should be dismissed because they are not parties to the contract and thus, cannot be liable under those claims.

Lion's Gate contends that even though the Wolfers did not sign the contract in their individual capacities, they may be held personally liable if the court pierces the corporate veil. "It is a basic tenet of corporate law that a corporation is an entity separate and distinct from its shareholders.  Only upon proof of fraud or injustice will the corporate veil be pierced to impose liability on the corporate principles." McGarvey v. G.I. Joe Septic Serv., 293 N.J. Super. 129, 150 (App. Div. 1996) (internal quotations omitted).

Even if Lion's Gate could sufficiently plead a cause of action for RICO and common law fraud against the Wolfers (see discussion of Count 4 infra), it has not alleged facts that justify piercing the corporate veil.  Consequently, Counts 2, 3, and 6 will be dismissed as against the Wolfers.

**Count 4**

Count 4 alleges a claim of common law fraud.  "The five elements of common law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (N.J. 1997).  FED. R. CIV. P. 9(b) states that claims of fraud must be

pled with particularity.

As discussed above, Kennedy Funding has not specifically identified a misrepresentation by KFI or the Wolfers. Thus, Count 4 will be dismissed.

**Count 5**

Count 5 alleges that KFI and the Wolfers violated the New Jersey Consumer Fraud Act by engaging in deceptive trade practices. To state a claim under the New Jersey Consumer Fraud Act, a plaintiff must allege a misrepresentation that "is material to the transaction and . . . is a statement of fact, found to be false, made to induce the buyer to make the purchase. Gennari v. Weichert Co. Realtors, 288 N.J. Super. 504, 535 (App. Div. 1996). As Lion's Gate has failed to allege a false statement of material fact, Count 5 will be dismissed.

**Count 7**

Count 7 alleges a RICO violation against Michael Leighton and Cole Schotz. To sufficiently plead such a claim, a plaintiff must allege facts that tend to show a pattern of racketeering activity, i.e., at least two examples of such activity. As Lion's Gate has failed to allege a pattern of racketeering against KFI and the Wolfers, Count 7 must be dismissed as well. Even if Lion's Gate had properly pled its claims against KFI and the Wolfers, it has failed to allege any facts that could show that Michael Leighton and Cole Schotz aided KFI in any fraudulent activities other than the alleged fraud against Lion's Gate. Although Lion's Gate alleges that Michael Leighton and Cole Schotz conspired to engage in other frauds and aided and abetted KFI in the commission of other frauds, Lion's Gate does not allege any specific facts reciting Michael Leighton's or Cole Schotz's involvement any such fraudulent activity. Thus,

Count 7 must be dismissed because Lion's Gate did not allege any facts that tend to show a pattern of racketeering activity.

**Motion by Lion's Gate to bar consideration of certain facts and arguments**

The motion by Lion's Gate to bar consideration of facts and arguments raised in various briefs and affidavits will be dismissed as moot.

## IV.  CONCLUSION

KFI's motion for judgment on the pleadings on Counts 1, 4 and 5 will be granted. The Wolfers' motion to dismiss Counts 1, 2, 3, 4, 5 and 6 as against them will be granted. Leighton's and Cole Schotz's motion to dismiss Count 7 will be granted. Each of these motions will be dismissed without prejudice. During the course of discovery Lion's Gate may develop evidence that will provide a basis for one or more of the dismissed claims. If so, Lion's Gate may move for leave to file an amended counterclaim and third-party complaint. Lion's Gate's motion to bar consideration of certain facts and arguments will be dismissed as moot. The court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise

DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:           April 17, 2006