NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| Kennedy Funding, Inc., | : | |
| | : | |
| Plaintiff, | : | Civ. No. 05-4741 (DRD) |
| | : | |
| v. | : | |
| | : | |
| Lion's Gate Development, LLC, et al., | : | **O P I N I O N** |
| | : | |
| Defendants | : | |
| | : | |

---

Jordan B. DeFlora, Esq.
Two University Plaza, Suite 402
Hackensack, NJ 07601

*Attorney for Plaintiff*

Gregg D. Trautmann, Esq.
TRAUTMANN & ASSOCIATES, L.L.C.
262 East Main Street
Rockaway, New Jersey 07866

*Attorney for Defendants*

**DEBEVOISE, Senior District Judge**

## I. PROCEDURAL HISTORY

Plaintiff, Kennedy Funding, Inc. ("KFI"), filed a complaint against Lion's Gate Development, LLC, Iyad A. Youssef, Leo National, Inc., and Elia Niam (referred to collectively as "Lion's Gate"), alleging claims arising from a loan agreement in which KFI agreed to lend

Lion's Gate $18.2 million as part of a real estate transaction. The complaint lists the following counts: 1) breach of contract; 2) fraud; and 3) breach of the implied covenant of good faith and fair dealing.

Thereafter, Lion's Gate filed a counterclaim and third-party complaint against KFI and several of its officers, Jeffrey Wolfer, Joseph Wolfer, Kevin Wolfer and Gregg Wolfer ("the Wolfers"), as well as the attorneys who represented KFI in the transaction, the firm of Cole, Schotz, Meisel, Forman & Leonard, PA ("Cole Schotz"), Michael R. Leighton, Esq., and various John Doe attorneys. The counterclaim and third-party complaint was later amended. Counts 1 through 5 of the amended counterclaim and third-party complaint allege the following claims against KFI and the Wolfers: Count 1 - violation of New Jersey's Racketeer Influenced Corrupt Organization Act ("RICO"); Count 2 - breach of contract with losses derived from the failure to close on the real estate transaction; Count 3 - breach of the covenant of good faith and fair dealing; Count 4 - common law fraud; and Count 5 - violation of the New Jersey Consumer Fraud Act. In Count 6 Lion's Gate charges KFI, the Wolfers, Michael Leighton and Cole Schotz with breach of contract for losses derived from the fees paid under the loan agreement. In Count 7 Lion's Gate charges Michael Leighton and Cole Schotz with New Jersey RICO conspiracy.

In an order dated April 17, 2006, the Court dismissed Count 2 of the Plaintiff's complaint, as well as Counts 1, 4, 5, and 7 of the Defendants' counterclaim and third-party complaint, and all Counts of the Defendants' counter-claim and third-party complaint as against the Wolfers. In a separate order dated June 12, 2006, the Court dismissed Count 6 of the Defendants' counterclaim and third-party complaint as against Cole Schotz and Michael Leighton. Currently before the Court is Plaintiff's motion for summary judgment, or, in the

alternative, enforcement of jury waiver and limitation of damages clauses in the loan agreement.

## II. BACKGROUND

KFI and Lion's Gate, after exchanging several drafts, entered into an agreement on August 10, 2005, whereby KFI would lend Lion's Gate $18.2 million dollars in order to purchase real estate, the closing to take place on August 15, 2005, time being of the essence.  (Pl.'s statement of facts ¶¶ 1,2.)[1] Lion's Gate then placed $536,000 in escrow with KFI's attorneys as a "commitment fee," in accordance with the terms of the agreement.  (Pl.'s statement of facts ¶ 3.) After this payment, KFI's attorneys provided Lion's Gate with a list of conditions known as a "closing checklist."  (Pl.'s statement of facts ¶ 4.)  Lion's Gate also maintains that other conditions were communicated orally after delivery of the "closing checklist."  (Dft.'s counter-statement of facts ¶ 18.)  Lion's Gate could not meet KFI's conditions in time to close, and on or about August 16, 2005, the parties began negotiating other deals to which the money held in escrow would be applied.  (Dft.'s counter-statement of facts ¶¶ 19-21.)  The negotiations failed, and this suit began.  (Dft.'s counter-statement of facts ¶ 22.)

The parties also agree that the property that Lion's Gate was to purchase, and which would serve as collateral for the loan, was the subject of a series of transactions between Leo National, Noel J. Hibbets, Esq., and Lambent Investments, LLC (whose manager was Noel J. Hibbets, Esq.) which inflated the value of the property from $12,000,000 to $26,000,000.  (Pl.'s

---

[1]Lion's Gate, in its opposition brief, proceeded to admit or deny the facts stated in the statement of facts set out in KFI's brief, rather than KFI's separate statement of undisputed material facts.  The paragraphs of the statement in KFI's brief are not numbered, but were referred to by Lion's Gate in the order in which they appear, and the Court has adopted this system for the purpose of describing the facts of this dispute.

statement of facts ¶¶ 7-11.)  KFI claims to have found this information through discovery, (Pl.'s statement of facts ¶ 7), while Lion's Gate points out that KFI knew that this property was to be the subject of a "flipped" transaction.  (Dft.'s counter-statement of facts ¶ 16.)

The contract contains language which allows KFI to terminate the agreement and retain the "commitment fee" in the event of "any fraudulent material misrepresentation or any intentional omission or concealment by the Borrower or any Guarantor of any material fact."  (Wolfer Aff. Ex. B.)  The agreement also contains language purporting to limit KFI's liability to Lion's Gate to the paid portion of the "commitment fee," and purporting to waive trial by jury.  (Wolfer Aff. Ex. B.)

### III.  DISCUSSION

#### Standard of Review

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v.

Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255).

**Contract Claims**

Plaintiff must prove the existence of a valid contract, material breach by Lion's Gate, and resulting damages in order to prevail on a breach of contract claim. Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 421 F.Supp.2d 831, 833 (D.N.J. 2006) (citing Coyle v. Englander's, 199 N.J. Super. 212, 233 (App. Div. 1985)). The parties agree that they executed a valid agreement. They also agree that KFI knew, prior to the execution of the loan commitment, that the property Lion's Gate intended to purchase was the subject of a "flipped" transaction, that is, Lion's Gate was to purchase the real estate from a seller who did not yet own the property, but was about to acquire it. However, KFI maintains that it was unaware, and found out only after discovery had commenced, that the property in question had been transferred several times between Defendant and companies affiliated with its attorney in order to inflate the purchase price. Withholding this information, KFI maintains, constituted a material omission, which by the loan commitment's terms would allow KFI to retain the "commitment fee" and terminate the commitment.

KFI did not know about this omission when it filed its suit; indeed, KFI admits that it became aware of nature of these property transfers *through discovery*. The New Jersey courts have not squarely addressed the issue of whether after-acquired evidence may be used in a breach of contract suit. See Nicosia v. Wakefern Food Corp., 136 N.J. 401, 420 (1994). However, this Court has predicted that under New Jersey law, a party with the power to disaffirm a contract may do so "even if he is ignorant of his power of avoidance and believes that his refusal or

failure is a breach," because "the legal consequences of a party's refusal or failure to perform are not affected by the fact that he is ignorant of some justification or excuse for his refusal." Massey v. Trump's Castle Hotel & Casino, 828 F.Supp. 314 (D.N.J. 1993) (quoting Restatement (Second) of Contracts § 385 cmt. a (1982)). Thus, if Lion's Gate's omission of the details of the previous transactions is considered material, Lion's Gate, and not KFI, would have breached the contract. The Court cannot, however, determine this issue on summary judgment. What exactly KFI knew about the property is in dispute. Lion's Gate points to a letter dated August 8, 2005, from Iyad Youssef to KFI's attorney to show that KFI knew that the property was to be purchased in a "flipped" transaction, while KFI insists that it never received a satisfactory explanation of why the owners listed on the title report were not the owner from whom Lion's Gate was supposed to purchase the property. (Pl.'s Br. at 1-2.) The scope of what KFI knew is therefore a question for the trier of fact.

Alternatively, KFI contends that Lion's Gate's failure to comply with its pre-closing requirements means that Lion's Gate breached the contract, entitling KFI to relief. This too, however, cannot be determined on summary judgment. The parties disagree about whether the conditions were provided only after the loan commitment was made, or beforehand. (Pl. Reply to Dft.'s counter-statement of facts ¶ 17). Lion's Gate also maintains that some conditions were expressed orally after delivery of the "pre-closing checklist" which contained the a prior set of conditions, and that even this earlier set of conditions contained over fifty items and was delivered four days before the scheduled closing. Lion's Gate alleges that "It was not possible . . . to meet the ever-increasing demands of Plaintiff." (Dft.'s counter-statement of facts ¶19.) If KFI did make it impossible to perform the contract by adding conditions as the closing date

approached, Lion's Gate would be entitled to damages.  See Wolf v. Marlton Corp., 57 N.J. Super. 278, 285 (App. Div. 1959); see also Hanig v. Orton, 119 N.J.L. 248, 252 (Sup. Ct. 1938). There is thus a major factual dispute that must be resolved at trial.

### Waiver of Jury Trial

KFI cites a New Jersey case, Fairfield Leasing Corporation. v. Techni-Graphics, 256 N.J. Super. 538, 541-543 (L.Div. 1992), in support of its argument that the jury waiver clause should not be enforced. However, the right to a jury trial in federal court is determined as a matter of federal law.  Simler v. Connor, 372 U.S. 221, 222 (1963). Jury waivers in lending agreements are often enforced,  Morgan Guaranty Trust Co. of New York v. Crane, 36 F.Supp.2d 602, 603 (S.D.N.Y 1999), but waivers of the right to a jury trial must be made voluntarily and knowingly. See, e.g. First Union Nat. Bank v. U.S., 164 F.Supp.2d 660, 663 (E.D. Pa. 2001). A waiver meets this standard when: "(1) there was no gross disparity in bargaining power between the parties, (2) the parties are sophisticated business entities, (3) the parties had an opportunity to negotiate the contract terms, and (4) the waiver provision was conspicuous." Id.  See also In re Southern Indust. Mechanical Corp., 266 B.R. 827 (W.D. Tenn. 2001).

The parties did, in fact, negotiate the terms of the agreement.  (Pl.'s Statement of Material Facts ¶ 4, First Amended Countercl. ¶¶ 34-40.)  This fact also indicates that there was no gross disparity in bargaining power.  Lion's Gate is an entity in the business of conducting real estate transactions, and the waiver clause itself was written in bold, capital letters in a separate paragraph under the heading "**WAIVER OF TRIAL BY JURY**."[2]  (Wolfer Aff. Ex. B.)  Given

---

[2] Neither the Third Circuit, nor the District Court of New Jersey, has addressed the issue of who bears the burden of proving the existence of the conditions for enforcement of a jury

all these facts, it is clear that the waiver of the right to a jury trial was knowing and voluntary, and therefore is enforceable.

### Limitation of Damages

The loan commitment also contained a clause that purports to limit KFI's liability to the "paid portion of the commitment fee," in this case, the $536,000 held in escrow. The limitation clause was conspicuous, written in bold capital letters in a separate paragraph of the agreement, under the heading "**LIMITATION OF DAMAGES**." (Wolfer Aff. Ex. B.) Where the parties have agreed upon a measure of damages, the courts are generally bound by that agreement. Utica Mutual Ins. Corp. v. Didonato, 187 N.J. Super. 30, 43 (App. Div. 1982); Linan-Faye Co. v. Housing Auth. of City of Camden, 847 F.Supp. 1191, 1205 (D.N.J. 1994), rev'd on other grounds, 49 F.3d 915 (3d Cir. 1995). However, a limitation of damages clause will not apply where a party's "conduct indicates bad faith or some other tortious intent." Edwin J. Dobson, Jr., Inc. v. State, 218 N.J. Super. 123, 128 (App. Div. 1987) (quoting Gherardi v. Trenton Board of Education, 53 N.J. Super. 349, 365 (App. Div. 1958).

Lion's Gate's counterclaim includes an allegation of bad faith, and whether KFI's conduct in communicating certain conditions close to the closing date constituted bad faith is a question for the trier of fact. Therefore, the Court declines to decide at this time whether the limitation of damages clause in the contract may be enforced.

---

waiver, and the other Circuit Courts are split on the issue. See, National Equipment Rental, Ltd. v. Hendrix, 565 F.2d 255 (2d Cir. 1977), Leasing Service Corp. v. Crane, 804 F.2d 828 (4th Cir. 1986), for the view that the burden is on the party seeking enforcement of the waiver, but see K.M.C. Co. v. Irving Trust Co., 757 F.2d 752 (6th Cir. 1985), for the contrary view. However, since the facts surrounding this jury waiver clause are not in dispute, the Court need not address this question.

## IV.  CONCLUSION

For the reasons discussed above, KFI's motion for summary judgment and motion to enforce the limitation of damages clause will be denied.  KFI's motion to enforce the waiver of jury trial clause will be granted.  The court will enter an order implementing this opinion.

**/s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:         July 17, 2006