**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------

KENNEDY FUNDING, INC.,          :
                                    :

             Plaintiff,       :          Civ. No. 05-4741 (DRD)
                                      :

                v.              :
                                      :

LION'S GATE DEVELOPMENT,    :         **O P I N I O N**
LLC, et al.,                      :
                                      :

            Defendants.     :
                                      :

-------------------------------------------------------

David Kohane, Esq.
Damian Albergo, Esq.
Kristine Dress, Esq.
COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800

*Attorneys for Plaintiff and Third Party Defendants Michael R. Leighton, Esq. and COLE,
SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.*

Gregg D. Trautmann, Esq.
TRAUTMANN & ASSOCIATES, L.L.C.
262 East Main Street
Rockaway, New Jersey 07866

*Attorney for Defendants/Third Party Plaintiffs*

**DEBEVOISE, Senior District Judge**

## I. PROCEDURAL HISTORY

Plaintiff, Kennedy Funding, Inc. ("KFI"), filed a complaint against Lion's Gate Development, LLC, Iyad A. Youssef, Leo National, Inc., and Elia Niam (referred to collectively as "Lion's Gate"), alleging claims arising from a loan agreement in which KFI agreed to lend Lion's Gate $18.2 million as part of a real estate transaction (the "Loan Commitment"). The complaint lists the following counts: 1) breach of contract; 2) fraud; and 3) breach of the implied covenant of good faith and fair dealing.

Thereafter, Lion's Gate filed a counterclaim and third-party complaint against KFI and several of its officers, Jeffrey Wolfer, Joseph Wolfer, Kevin Wolfer and Gregg Wolfer ("the Wolfers"), as well as the attorneys who represented KFI in the transaction, the firm of Cole, Schotz, Meisel, Forman & Leonard, PA ("Cole Schotz"), Michael R. Leighton, Esq., and various John Doe attorneys. The counterclaim and third-party complaint was later amended. Counts 1 through 5 of the amended counterclaim and third-party complaint allege the following claims against KFI and the Wolfers: Count 1 - violation of New Jersey's Racketeer Influenced Corrupt Organization Act ("RICO"); Count 2 - breach of contract with losses derived from the failure to close on the real estate transaction; Count 3 - breach of the covenant of good faith and fair dealing; Count 4 - common law fraud; and Count 5 - violation of the New Jersey Consumer Fraud Act. In Count 6 Lion's Gate charges KFI, the Wolfers, Michael Leighton and Cole Schotz with breach of contract for losses derived from the fees paid under the loan agreement. In Count 7 Lion's Gate charges Michael Leighton and Cole Schotz with New Jersey RICO conspiracy.

In an order dated April 17, 2006, the Court dismissed Count 2 of the Plaintiff's complaint, as well as Counts 1, 4, 5, and 7 of the Defendants' counterclaim and third-party complaint, and all Counts of the Defendants' counterclaim and third-party complaint as against

2

the Wolfers.  In a separate order dated June 12, 2006, the Court dismissed Count 6 of the

Defendants' counterclaim and third-party complaint as against Cole Schotz and Michael

Leighton.

On May 26, 2006, KFI filed a motion for summary judgment, or in the alternative, for

enforcement of jury waiver and limitation of damages clauses in the loan agreement.  In an order

dated July 19, 2006, the Court denied KFI's motion for summary judgment and motion to

enforce the limitations of damages clause, and the Court granted KFI's motion to enforce the

waiver of jury trial clause.  Lion's Gate now moves for summary judgment on the grounds that

the Loan Commitment is unenforceable as a matter of law.

## II.  BACKGROUND

The facts of this case were detailed in this court's prior opinion dated July 17, 2006 and

need not be repeated here.

## III.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate when the record "show[s] that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party,"  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the

applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant

of summary judgment.  Id.  In deciding whether there is a disputed issue of material fact, the

court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255).

## B.  Lion's Gates Affirmative Defenses

Lion's Gate asserts several affirmative defenses in its brief in support of its motion for summary judgment.  It alleges that the Loan Commitment is unenforceable because it is illusory, unsupported by consideration, and unconscionable.  Lion's Gate also claims that performance under the Loan Commitment was impossible and that KFI waived its rights under the Loan Commitment.

As an initial matter, it is important to note that under Fed. R. Civ. P. 8(c), a party must set forth any affirmative defenses in its pleadings, and that "[f]ailure to raise an affirmative defense by responsive pleading or by appropriate motion generally results in the waiver of that defense." Charpentier v. Godsil, 937 F.2d 859, 863 (3rd Cir. 1991).

"Failure to raise an affirmative defense in a responsive pleading, however, does not always result in waiver.  For example, a party may raise an unpled affirmative defense in an appropriate motion." Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1373 (3rd Cir. 1993) (citations omitted).  In Kleinknecht, the court considered  the merits of the defendant's immunity defense where, although defendant asserted the defense in its motion for summary judgment instead of its answer, plaintiff was not prejudiced.  Id. at 1374.

Here, the only affirmative defense argued in Lion's Gate's brief which was also pled in its

4

answer is lack of consideration.  Therefore, Lion's Gate has failed to comply with the requirements of Fed. R. Civ. P. 8(c).  However, because KFI has not alleged, and the Court does not find, that KFI has been prejudiced by the fact that Lion's Gate raised the defenses in its motion for summary judgment, Lion's Gate's First Amended Answer will be deemed amended to include the aforementioned affirmative defenses, and the Court will address the merits of these defenses.

### 1.  Illusory Promises

An illusory promise is defined as a "promise which by [its] terms make[s] performance entirely optional with the promisor whatever may happen, or whatever course of conduct in other respects he may pursue."  Del Sontro v. Cendant Corp., 223 F. Supp. 2d 563, 577-78 (D.N.J. 2002) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 2, cmt. e (1979)); see also Bryant v. City of Atlantic City, 309 N.J. Super. 596, 620 (App. Div. 1998).  In other words,

> [u]nder an illusory promise, the "promisor has committed himself not
> at all."  A promise is not illusory, however, if the power to terminate
> is dependent on something outside the promisor's control, such as the
> promisee's nonperformance, or the happening of some natural
> disaster.  Generally, courts should seek to enforce contracts and avoid
> deeming them illusory.

Del Sontro, 223 F. Supp. 2d at 578 (citations omitted).

Under New Jersey law, "[e]very contract contains an implied covenant of good faith and fair dealing.  Under such a covenant, 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]'"  Wade v. Kessler Inst., 172 N.J. 327 (2002) (citations omitted).  This "implied obligation to use good

faith is enough to avoid the finding of an illusory promise." In re Cendent Corp. Lit., 264 F.3d 286, 300 (3rd Cir. 2001) (quoting 2 JOSEPH M. PERILLO & HELEN HADJIYANNAKIS BENDER, CORBIN ON CONTRACTS § 5.28, at 149-50 (rev. ed. 1995)).

Lion's Gate argues that the Loan Commitment is unenforceable because it allows KFI the unfettered option of performing under the agreement. It specifically contends that three sections of the Loan Commitment illustrate that it is illusory. First, Lion's Gate argues that the requirement of documentation is in KFI's unfettered discretion. The section addressing documentation states:

> KFI's commitment to provide the Loan is subject to the negotiation, execution and delivery of definitive Loan and security agreements, mortgages or deeds of trust, notes, and other documentation and customary certificates and legal opinions (collectively, the "Loan Documents"), which in each case will be in the form, substance and enforceability satisfactory to KFI in its sole discretion. The Loan Documents shall contain conditions precedent, representations and warranties, covenants, events of default and other terms and conditions consistent with the terms hereof as shall be satisfactory to KFI in its sole discretion and deemed appropriate by KFI for a transaction of the type contemplated herein.

Lion's Gate argues that "the contingencies that KFI has demanded be included in its 'Loan commitment' leave the question of ultimate performance completely within the unfettered discretion of KFI." (Defs.' Br. 4).

Second, Lion's Gate argues that another section sets KFI up as "the sole and exclusive judge of what conduct, actions or inactions on the part of the borrower will amount to a breach of the agreement thereby allowing KFI to retain the advance fee." (Defs.' Br. 5). That section states:

6

10.    Miscellaneous: Prior to the closing of the Loan and disbursement of funds, in each instance the Borrower must comply with the following:

\*\*\*

(e)    This commitment is subject to the accuracy of all information, representations, exhibits and other materials submitted with or in support of the Loan request and there must be no adverse change in the set of facts prior to the disbursements of funds or during the term of the Loan.  This commitment may be terminated by KFI and the Commitment Fee retained and earned by KFI in the event of the folllowing:

(i)    If the Borrower shall fail to comply with any of the terms or conditions hereof.

(ii)   In the event of a sale, conveyance or other disposition of any of the Collateral.

(iii)  In the event of a materially adverse change in the financial condition of the Borrower or any Guarantor.

(iv)   Any fraudulent material misrepresentation or any omission or concealment by the Borrower or any Guarantor of any material fact.

(f)    In the event of any default during the term of this Commitment, KFI may, at its option, require immediate payment of the balance of the Commitment Fee and KFI may terminate the Commitment and retain the paid portion of the Commitment Fee.

Finally, Lion's Gate argues that the section addressing the return of the commitment fee shows that "KFI has set itself up as the sole arbiter of whether the Borrower has complied with the terms of the 'Loan commitment' and as a consequence whether the Borrower will be forced to forfeit the advance fee." (Defs.' Br. 5).  That section states:

RETURN OF COMMITMENT FEE:

If KFI is unable to perform its obligations under the terms of this commitment for whatever reason, KFI shall only be obligated to refund the paid portion of the commitment fee.  SAID REFUND SHALL BE THE TOTAL EXTENT OF ANY LIABILITY OR

7

> OBLIGATION ON THE PART OF KFI UNDER ANY
> CIRCUMSTANCE. There will be no refund if Borrower does not
> accept the loan offer(s) made by KFI pursuant to this commitment or
> Borrower has not complied with all the conditions of this
> commitment.

The parties in this matter entered into the Loan Commitment and were bound by the

terms therein. Although the terms establish certain requirements that must be complied with,

they do not make performance on the part of KFI entirely optional. For example, under the Loan

Commitment, KFI was obligated to provide the loan if certain conditions, including the

submission of proper documentation, occurred. Additionally, if KFI was unable to perform, it

was obligated to refund the commitment fee. Finally, KFI was bound by the implied covenant of

good faith and fair dealing. This obligation, by itself, is enough to avoid the finding of an

illusory promise.[1] In re Cendent Corp. Lit., 264 F.3d at 300. Thus, the Loan Commitment is not

illusory as a matter of law.

### 2.  Option Contract- Lack of Consideration

Lion's Gate next argues that the Loan Agreement is an unenforceable attempt to create an

option contract because it is unsupported by consideration. An option contract is defined as "a

continuing offer supported by a sufficient consideration, a promise upon an executed legal

consideration, and so irrevocable for the time of its continuance." Borough of West Caldwell v.

Borough of Caldwell, 26 N.J. 9, 26 (1958).

No contract is enforceable without the flow of consideration. Continental Bank of

Pennsylvania v. Barclay Riding Academy, Inc., 93 N.J. 153, 170 (1983). "Consideration is the

---

[1]Whether the parties acted in good faith is a question of fact that cannot be decided on a
motion for summary judgment.

price bargained for and paid for a promise." Id. "[C]onsideration may take the form of either a detriment incurred by the promisee or a benefit received by the promisor." Id. "[T]he value given or received as consideration need not be monetary or substantial." Oscar v. Simeonidis, 352 N.J. Super. 476, 485 (App. Div. 2002). Mutual promises are sufficient consideration as they are "reciprocal considerations for each other." Id.

Lion's Gate argues that "KFI gave no consideration for its receipt of the option to loan money should it so chose." (Defs.' Br. 7). However, KFI agreed to make the loan under the Loan Agreement and was bound by its terms. Similarly, Lion's Gate was bound. As this exchange of mutual promises is sufficient consideration to support the Loan Commitment, Lion's Gate's argument fails.

**3. Unconscionability**

As an additional ground that the Loan Commitment is unenforceable, Lion's Gate argues that the Loan Commitment is unconscionable. "The defense of unconscionability, specifically, calls for a fact-sensitive analysis in each case . . ." Delta Funding Corp. v. Harris, 2006 WL 2277984, at *4 (N.J. Aug. 9, 2006). "Courts generally have applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability." Id. Procedural unconscionability has been defined as "unfairness in the formation of the contract" and substantive unconscionability has been defined as "excessively disproportionate terms." Sitogum Holdings Corp., Inc. v. Ropes, 352 N.J. Super. 555, 564 (Ch. Div. 2002).

> The first factor-procedural unconscionability-can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or

> unduly complex contract terms, bargaining tactics, and the particular
> setting existing during the contract formation process.  The second
> factor-substantive unconscionability-simply suggests the exchange of
> obligations so one-sided as to shock the court's conscience.

Id. at 564-65.

Lion's Gate argues that the Loan Commitment is unconscionable.  Relying on Shell Oil

Co. v. Marinello, 63 N.J. 402 (1973), Lion's Gate appears  to contend that enforcement of the

Loan Commitment violates public policy and will result in public injury.  Lion's Gate argues that

KFI did nothing to prepare for the closing other than collect fees.  It states that "[w]hen the

borrower could not meet KFI's unilaterally imposed demands it was declared in breach and KFI

claimed the right to retain the advance fee." (Defs.' Br. 12).

Lion's Gate's reliance on Shell Oil is misguided.  In that case, the court found the

provision in the lease giving Shell the ability to terminate its business relationship with one of its

service station operators almost at will was the result of the disproportionate bargaining positions

of the parties.  Id. at 408-09.  The court held that such a provision is void against public policy.

Id. at 410.  Here, Lion's Gate does not allege, nor is there evidence of, disproportionate bargaining

positions.  By contrast, both parties are sophisticated business entities with no disparity in

bargaining power.[2]

Lion's Gate argues in the alternative that the Court should declare the contract

unenforceable based upon the totality of the circumstances in this matter and relies on Frank

Briscoe Co., Inc., 65 F. Supp. 2d 285 (D.N.J. 1999).  In Frank Briscoe, the court held that a

---

[2]The Court made this finding in its July 19, 2006 opinion.

provision of a post-default agreement was not violative of public policy but nonetheless found that based on the totality of the parties' conduct, the provision would not be enforced.  Id. at 312-13. The court based its finding on the fact that: (1) despite prior breaches by the debtor, the relationship had continued; (2) further loans were extended by the creditor after those breaches; and (3) creditor had also breached the agreement.  Id. at 313 n.31.  The court concluded that, "based on the overall life and success of the Program, it would be inequitable to conclude that Briscoe forfeits its rights under . . . [the agreement]."  Id.

Here, Lion's Gate has not presented, nor does the court find, that a relationship similar to that in Frank Briscoe existed between the parties that would even allow this Court to consider such a remedy.  Consequently, this argument also fails.

### 4.  Waiver

"Waiver 'is the intentional relinquishment of a known right.'  Waiver must be voluntary and there must be a clear act showing the intent to waive the right.  Furthermore, waiver 'presupposes a full knowledge of the right and an intentional surrender; waiver cannot be predicated on consent given under a mistake of fact.'"  County of Morris v. Fauver, 153 N.J. 80, 104-05 (1998) (quoting West Jersey Title & Guar. Co. v. Indus. Trust Co., 27 N.J. 144 (1958)).

Lion's Gate contends that the KFI waived its rights under the Loan Commitment when "KFI and its attorneys agreed to either extend the time for closing on the subject loan or enter into a new transaction and apply the advance fee to that new transaction."  (Defs.' Br. 18).   Citing Ross Systems v. Linden Dari-Delite, Inc., 62 N.J. Super. 439 (App. Div. 1960), aff'd in part, rev'd in part, 35 N.J. 329 (1961), Lion's Gate argues that "a parties [sic] failure to follow procedures for

declaring a breach set forth in a contract and that same parties [sic] continuance of contractual relationship will constitute a waiver of the right to declare a forfeiture as a result of the alleged breach." (Defs.' Br. 18).  In Ross, the court found that defendants' "failure to declare a breach of the contract and their continuance under its terms for more than a year after having learned of the breach constitute a waiver of their right to declare a forfeiture of the agreement for previous violations by plaintiff."  Id. at 449.

KFI contends that the day after the alleged breach, it sent a letter to Lion's Gate, stating that Lion's Gate had failed to comply with their obligations under the Loan Commitment. (Pl.'s Br. 28).  Additionally, KFI claims that thereafter, the parties engaged in settlement negotiations, and that these settlement negotiations were not a continuance of the Loan Commitment.  (Id.). Because there is a factual dispute as to exactly what transpired after the alleged breach, summary judgment on the grounds of waiver will be denied.

**5.  <u>Impossibility</u>**

"Impossibility or impracticability of performance are complete defenses where a fact essential to performance is assumed by the parties but does not exist at the time for performance. They are not defenses where the difficulty is the personal inability of the promisor to perform." <u>Connell v. Parlavecchio</u>, 255 N.J. Super. 45, 49 (App. Div. 1992).

Here, Lion's Gate argues that because KFI made it impossible to provide the documents required by the Loan Commitment in time to close, the contract is unenforceable as a matter of law.  KFI contends that Lion's Gate failed to fulfill its obligations under the terms of the Loan Commitment.  As there is a factual dispute as to whether KFI made it impossible to perform, summary judgment is inappropriate.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, Lion's Gate's motion for summary judgment will be

denied.  The court will enter an order implementing this opinion.


/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated:        September 25, 2006

13